Citation Nr: 1554506 
Decision Date: 12/31/15 Archive Date: 01/07/16

DOCKET NO. 13-34 759 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Paul, Minnesota


THE ISSUE

Entitlement to special monthly compensation (SMC) based on the need for regular aid and attendance (A&A) or by reason of being housebound.


REPRESENTATION

Veteran represented by: The American Legion


ATTORNEY FOR THE BOARD

H.W. Walker, Counsel

INTRODUCTION

The Veteran served on active duty from November 1943 to May 1946. 

This case comes before the Board of Veterans' Appeals (Board) on appeal of a March 2013 decision by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Paul, Minnesota, which denied the benefit on appeal.

The issues of entitlement to service connection for coronary artery disease, secondary to asbestosis and depression secondary to bilateral hearing loss, and entitlement to an increased rating for service-connected asbestosis related lung disease have been raised by the record in the December 2015 informal hearing presentation, but have not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over them, and they are referred to the AOJ for any appropriate action. 38 C.F.R. § 19.9(b) (2015).

This appeal was processed using the Veterans Benefits Management System (VBMS) and Virtual VA paperless claims processing systems. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDINGS OF FACT

1. The Veteran is in receipt of service connection for bilateral hearing loss, rated as 70 percent; asbestosis with benign pleural fibrosis, rated as 60 percent; and tinnitus, rated as 10 percent; he also is in receipt of a total disability rating based on individual unemployability (TDIU).
 
2. The evidence of record does not support the conclusion that the Veteran is permanently housebound by reason of his service-connected disabilities, or render him unable to care for his daily needs without requiring the regular aid and attendance of another person.


CONCLUSION OF LAW

The criteria for an award of SMC based on the need for regular aid and attendance or housebound status are not met. 38 U.S.C.A. §§ 1114(s), 5101, 5103, 5103A, 5107, 5121 (West 2014); 38 C.F.R. § 3.350 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Board has thoroughly reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, all the evidence submitted by or on behalf of the Veteran. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (noting that the Board must review the entire record, but does not have to discuss each piece of evidence). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claim. The Veteran must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (finding that the law requires only that the Board address its reasons for rejecting evidence favorable to the Veteran).

Veterans Claims Assistance Act of 2000 (VCAA)

With respect to the Veteran's claims, the VA has met all statutory and regulatory notice and duty to assist provisions. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015).

Under the VCAA, when VA receives a complete or substantially complete application for benefits, it is required to notify the Veteran and his or her representative, if any, of any information and medical or lay evidence that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). In Pelegrini v. Principi, 18 Vet. App. 112, 120-21 (2004) (Pelegrini II), the United States Court of Appeals for Veterans Claims (Court) held that VA must inform the Veteran of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; (3) that the Veteran is expected to provide; and (4) request that the Veteran provide any evidence in his or her possession that pertains to the claim. The requirement of requesting that the Veteran provide any evidence in his possession that pertains to the claim has been eliminated by the Secretary. See 73 Fed. Reg. 23353 (final rule eliminating fourth element notice as required under Pelegrini II, effective May 30, 2008). Thus, any error related to this element is harmless. 

A VCAA letter dated in January 2013 fully satisfied the duty to notify provisions. See 38 U.S.C.A. § 5103(a) (West 2014); 38 C.F.R. § 3.159(b)(1) (2015); Quartuccio, at 187. The Veteran was advised that it was ultimately his responsibility to give VA any evidence pertaining to the claim. The letter informed him that additional information or evidence was needed to support his claim, and asked him to send the information or evidence to VA. See Pelegrini II, at 120-121. The letter also explained to the Veteran how disability ratings and effective dates are determined. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

Furthermore, even if any notice deficiency is present in this case, the Board finds that any prejudice due to such error has been overcome in this case by the following: (1) based on the communications sent to the Veteran over the course of this appeal, the Veteran clearly has actual knowledge of the evidence the Veteran is required to submit in this case; and (2) based on the Veteran's contentions as well as the communications provided to the Veteran by VA, it is reasonable to expect that the Veteran understands what was needed to prevail. See Shinseki v. Sanders/Simmons, 129 S. Ct. 1696 (2009); Fenstermacher v. Phila. Nat'l Bank, 493 F.2d 333, 337(3d Cir. 1974) ( stating that "no error can be predicated on insufficiency of notice since its purpose had been served."). In order for the Court to be persuaded that no prejudice resulted from a notice error, "the record must demonstrate that, despite the error, the adjudication was nevertheless essentially fair." Dunlap v. Nicholson, 21 Vet. App. 112, 118 (2007). 

In this case, the Veteran has been continuously represented by an experienced national service organization and has submitted argument in support of his claim. These arguments have referenced the applicable law and regulations necessary for a grant of SMC. Thus, the Board finds that the Veteran has actual knowledge as to the information and evidence necessary for him to prevail on his claim and is not prejudiced by a decision in this case. As such, a remand for additional notice would serve no useful purpose and would in no way benefit the Veteran. Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (indicating that remands which would only result in unnecessarily imposing additional burdens on the VA with no benefit flowing to the Veteran are to be avoided).

The Board also concludes VA's duty to assist has been satisfied. The Veteran's service treatment records (STRs) and VA medical records are in the file. Private medical records identified by the Veteran have been obtained, to the extent possible. The Veteran has at no time otherwise referenced outstanding records that he wanted VA to obtain or that he felt was relevant to the claim. 

The duty to assist also includes providing a medical examination or obtaining a medical opinion when such is necessary to make a decision on the claim. 38 C.F.R. § 3.159(c)(4)(i) (2015). 

In this case, the Veteran was provided a VA aid and attendance examination July 2015. The examiner considered the Veteran's complaints and conducted a physical examination. The examiner noted that the Veteran is not housebound, nor does he require the regular aid and assistance of another person due to his service-connected disabilities. Therefore, as the opinions were based on review of the claims file, including the Veteran's statements, and provided an extensive rationale for the opinions provided, the Board concludes that the opinions obtained in this case are adequate. Given the foregoing, the Board finds the evidence of record to be thorough, complete, and sufficient upon which to base a decision with respect to the Veteran's claim for SMC. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007) (noting that when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate). 

Given the association of the outstanding VA treatment records, the July 2015 VA A&A examination; and the subsequent readjudication of the claim; the Board finds that there has been substantial compliance with its May 2015 remand directives. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (finding that a remand by the Board confers upon the claimant, as a matter of law, the right to compliance with the remand instructions, and imposes upon the VA a concomitant duty to ensure compliance with the terms of the remand); see also D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999).

As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this case, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

Legal Criteria

SMC is payable to a Veteran for anatomical loss or loss of use of both feet, one hand and one foot, blindness in both eyes with visual acuity of 5/200 or less, or being permanently bedridden or so helpless as a result of service-connected disability that he or she is in need of the regular aid and attendance of another person. 38 U.S.C.A. § 1114(l); 38 C.F.R. § 3.350(b). 

Determination of this need is subject to the criteria of 3.352. Under 38 C.F.R. § 3.352, the factors considered to determine whether regular aid and attendance is needed include: inability to dress or undress, or to keep herself ordinarily clean and presentable; frequent need to adjust special prosthetic or orthopedic appliances which by reason of the particular disability requires aid (this does not include adjustment of appliances that persons without any such disability would be unable to adjust without aid, such as supports, belts, lacing at the back, etc.); inability to feed herself through loss of coordination of upper extremities or through extreme weakness; inability to attend to wants of nature; or incapacity, physical or mental, which requires care or assistance on a regular basis to protect a claimant from the hazards or dangers incident to his daily environment. 38 C.F.R. § 3.352(a).

It is not required that all of the disabling conditions enumerated in 38 C.F.R. § 3.352(a) be found to exist before a favorable decision is permissible. Particular personal functions which the Veteran is unable to perform should be considered in connection with her condition as a whole. It is only necessary that the evidence establish that he is so helpless as to need regular aid and attendance, not that there is a constant need. 38 C.F.R. § 3.352(a); Turco v. Brown, 9 Vet. App. 222 (1996). It is logical to infer, however, a threshold requirement that "at least one of the enumerated factors be present." Turco, 9 Vet. App. at 224. "Bedridden" will be that condition which, by virtue of its essential character, actually requires that the claimant remain in bed. The fact that a claimant has voluntarily taken to bed or that a doctor has prescribed rest in bed for a greater or lesser part of the day to promote convalescence or cure is insufficient. 38 C.F.R. § 3.352(a).

To establish entitlement to SMC based on housebound status under 38 U.S.C.A. § 1114(s), the evidence must show that a Veteran has a single service-connected disability evaluated as 100 percent disabling and an additional service-connected disability, or disabilities, evaluated as 60 percent or more disabling that is separate and distinct from the 100 percent service-connected disability and involving different anatomical segments or bodily systems; or, the Veteran has a single service-connected disability evaluated as 100 percent disabling and due solely to service-connected disability or disabilities, the Veteran is permanently and substantially confined to his or her immediate premises. 38 C.F.R. § 3.350(i).

Factual Background and Analysis

The Veteran seeks SMC benefits for A&A or housebound. He has contended that he is unable to walk very far due to his lung condition (claims no lung capacity), and must use a walker and an electric wheelchair for ambulation. He asserts that he now needs assistance with grocery shopping, dressing/undressing, obtaining food, medications, and other activities of daily living. 

Service connection is currently in effect for the following: bilateral hearing loss, rated as 70 percent; asbestosis with benign pleural fibrosis, rated as 60 percent; and tinnitus, rated as 10 percent.

The Veteran has had a combined disability rating of 90 percent since February 11, 2015. Additionally, he is in receipt of a total disability rating based on individual unemployability (TDIU) due to his service-connected bilateral hearing loss, beginning August 30, 2008.

He filed his claim for SMC in November 2012. In conjunction with the claim, he submitted a statement from his treating physician noting trouble with mobility. The physician indicated that the Veteran 

has trouble with his mobility because of the disease called CIDPN (chronic inflammatory demyelinating polyneuropathy), which is a neurological disorder. He also has other medical illness including coronary artery disease, chronic kidney disease, diabetes, unhealed ulcer on is left heel and leg edema. He needs to be in a wheelchair, and his wife needs to help him at home to prevent him from falling down. He is not steady on his feet, his balance is poor, and his wife also has to assist him for transfers including from the house to the car on the ramp and car to the house as well. She needs to bring him to medical facilities for his appointments and treatment. She also has to prepare meals, do his laundry, dressing changes on his heel ulcers, obtaining medication as well.

In a January 2013 statement from the Veteran's spouse, she indicated that she has been taking care of him over the years. She noted that his CIDPN has left him unable to care for himself. He is short of breath and cannot walk more than 15 feet without the assistance of a cane or walker. She stated that he uses an electric wheelchair as he has poor balance. She prepares his meals, does his laundry, and gets his medications. His wife stated that she must watch over him closely as he is mostly homebound. 

In the Veteran's January 2013 statement, he echoed his wife's statements and contends VA should reimburse her for his care. 

In February 2013, the Veteran was given an A&A physical examination, during which the examining nurse practitioner (NP) noted the Veteran's physical limitations. The NP indicated the following diagnoses impact the Veteran: chronic inflammatory demyelinating polyneuropathy, chronic kidney disease, lumbar stenosis, non-insulin dependent diabetes mellitus, obesity, and coronary artery disease. She described the Veteran as being morbidly obese. He can only walk six to eight steps or transfer to the wheelchair. He is able to sit upright, but has a poor gait, poor balance, and is a high fall risk. He is able to feed himself, but needs help shaving due to weak upper body strength. He requires assistance toileting and dressing/undressing. The NP described poor muscle tone and generalized weakness in the lower extremities. 

She noted the Veteran is unable to prepare his own meals, he needs assistance in bathing and other hygiene needs, he requires medication management, and cannot manage his own financial affairs. The physician indicated the Veteran has loss of memory, poor muscle conditioning, poor balance, inability to perform any activities of daily living without significant assistance, and leaves home in a wheelchair only to attend doctors' appointments. These doctor visits occur two to four times per month He uses a can to ambulate five to six steps, but otherwise requires the use of a wheelchair. 

In February 2013, the Veteran submitted a statement from his cleaning lady. She observed that the Veteran must use a cane or walker to prevent him from falling. He also uses an electric wheelchair. She opined that the Veteran is totally disabled. She recalled helping him put on his socks, shoes, and jacket. She also noted that the Veteran has little feeling in his feet, left hand, and arm, and requires help doing every day activities. 

In April 2013, the Veteran submitted VA-Form 21-2680 (Examination for Housebound Status or Permanent Need for Regular Aid and Attendance) filled out by his treating physician. His physician indicated that the Veteran has chronic inflammatory demyelinating polyneuropathy, chronic kidney disease, and type II diabetes mellitus, and opined that the Veteran's obesity and inflammatory polyneuropathy restrict his activities and functions. The physician made similar findings as the NP as to what assistance he needs to perform activities of daily living. The physician opined that the Veteran is homebound and can only ambulate six to ten feet with a walker. He only leaves home to see his physicians. 

In April 2013, another treating physician opined that the Veteran's activities and functions are limited by his neuropathy with weakness and sensory loss. She also noted his other diagnoses of chronic inflammatory demyelinating polyneuropathy, chronic renal failure, lumbar stenosis, diabetes mellitus, obesity, and ulcers. She noted that the Veteran requires the assistance in his daily activities and requires a wheelchair for ambulation. Again, he only leaves his home for doctor visits. 

In a May 2013 letter from the Veteran's neurologist, he indicated the CIDPN causes severe weakness and is unable to walk. He noted that the Veteran "has multiple medical problems which are also contributing to disability," and he requires a caregiver. 

In an August 2014 private evaluation for patient receiving home care, the clinician noted that the Veteran's back pain causing difficulty walking and diabetic neuropathy are the primary reasons for home health care. The clinician also noted he is homebound due to his back pain and diabetic neuropathy. 

Of record are physical therapy (PT) treatment notes dated in September 2014 show oxygen saturation of 94 percent after walking 40 feet. 

The Veteran was afforded a VA respiratory examination in March 2015 during which the examiner found that the "VETERAN IS UNABLE TO DO WORK WHICH REQUIRE[S] WALKING MORE THAN 10-15 FEET OR DO ANY WORK REQUIRE PHYSICAL ACTIVITY DUE TO ASBESTOS INDUCED LUNG DISEASE." The Veteran's history of asbestos exposure and subsequent treatment was noted. He told the examiner that he believes he is unable to walk more than 15 feet and is housebound due to his lung disease. The examiner diagnosed asbestosis with benign pleural fibrosis, but noted that during pulmonary function testing (PFTs), the Veteran's effort and cooperation was poor. No opinion was provided for aid and attendance purposes. 

In July 2015, the Veteran was afforded another VA examination to determine whether his service-connected disabilities cause him to be housebound or require the regular aid and assistance of another. Following review of the claims file, and interview and physical examination, the examiner opined that the Veteran's respiratory functional impairment (dyspnea with exertion) is less likely than not caused or aggravated by his service-connected asbestosis with benign pleural fibrosis."

In reaching this conclusion, the examiner opined that the original diagnosis of asbestosis was made in error and is not supported by the medical evidence. The Veteran has no showing of pulmonary fibrosis on CT scans dated from July 2007. He has had minimal changes shown along the hemidiaphragms, but there is no evidence of progression. The examiner referenced prior pulmonology consults (private and VA) showing no changes in the lungs that are typical for asbestos pleural plaques or asbestos related fibrosis of the lung. He described a private physician's letter to the Veteran that included a notation that although the Veteran's exposure to asbestos was significant, he does not have the typical characteristics of asbestos damage to the lungs. 

Ultimately, the July 2015 VA examiner opined that the Veteran does not have asbestosis, and the proper diagnosis should be "asbestos-related benign pleural plaques/fibrosis along the hemidiaphragms." He opined that these do not cause significant impairment of pulmonary function. 

The July 2015 examiner further opined that the Veteran's ambulatory functional impairment caused by dyspnea on exertion is less likely than not caused or aggravated by his service-connected asbestosis with benign pleural fibrosis. The examiner reiterated his opinion that the Veteran does not have asbestosis and his asbestos-related condition is not likely disabling for ambulation. The examiner related his difficulty with ambulation on his non-service connected conditions such as diabetes mellitus with neuropathy, CIDPN, Guillain-Barre Syndrome, spinal stenosis with neurogenic claudication, chronic kidney with anemia and weakness, and obesity.

The examiner opined that the Veteran's service-connected disabilities do not render him housebound or in the need of regular aid and attendance of another. In reaching this conclusion, the examiner offered the following rationale:

Veteran is not housebound at this time. He does not need aid and assistance of another person at this time. He is independent with his personal cares. His age and multiple severe medical conditions, mostly non-service connected, are bringing him to the brink of requiring aid and assistance, and being housebound, but not yet. His service connected conditions do not impose disabilities likely to require aid and assistance or cause housebound limitation.

There is no clinical opinion of record finding that the Veteran's service-connected disabilities render him housebound or in need of the regular aid and assistance of another. 

Upon careful review of the record the Board finds that the preponderance of the evidence is against awarding SMC benefits due to the Veteran being housebound or in need of the regular aid and attendance of another person. 

In the present case, there is no dispute as to the fact that the Veteran is not in receipt of service connection for a disability rated as 100 percent disabling. TDIU can be considered a total disability rating for purposes of housebound benefits. See Bradley v. Peake, 22 Vet. App. 280 (2008). Additionally, the Veteran does have a second disability rating evaluated as 60 percent or more disabling that is separate and distinct from the service-connected disabilities that were the basis for the grant of TDIU. Here, his bilateral hearing loss was the basis for the finding of a TDIU, and he was later awarded a 60 percent rating for his asbestos-related lung disease. As such, he meets the threshold requirement for housebound benefits. 

The competent evidence of record, however, does not demonstrate that the Veteran is permanently housebound as a result of his service-connected disabilities. Although the Veteran is totally disabled due to his service-connected hearing loss, he is not shown to be restricted to his home or the immediate premises. In fact, the record supports the conclusion that the Veteran is mobile and is not confined to his home as a result of his service-connected disabilities. For example, the Veteran was able to attend his medical appointments with an escort, and uses a walker and electric wheelchair for ambulation. Further, the most probative evidence of record shows that his non-service connected disabilities have restricted his mobility, not his service-connected bilateral hearing loss, tinnitus, and asbestos-related lung condition. Accordingly, the Board finds that entitlement to special monthly compensation at the housebound rate is not established. 38 U.S.C.A. § 1114(s); 38 C.F.R. § 3.350(i). 

The Board notes that the evidence of record does not show that the Veteran's service-connected disabilities have caused the anatomical loss or loss of use of both feet or one hand and one foot, and he is not blind in both eyes. Consequently, the Veteran can only establish entitlement to SMC under 38 U.S.C.A. § 1114(l) by showing his service-connected disabilities cause him to be permanently bedridden or so helpless as to be in need of regular aid and attendance under the criteria of 38 C.F.R. § 3.352(a).

The Board finds that the preponderance of the medical evidence does not reflect that the Veteran's service-connected disabilities have rendered him unable to dress or undress himself, to keep himself ordinarily clean and presentable, to feed himself, to attend to the wants of nature, or that his service-connected disabilities require the need of adjustment of any special prosthetic or orthopedic appliance or result in other incapacity that requires care or assistance on a regular basis to protect him from hazards or dangers incident to his daily environment. The evidence also does not reflect that the Veteran has a service-connected condition which, through its essential character, actually requires that he remain in bed. Hence, the Board finds that the evidence reflects that the Veteran's service-connected disabilities do not cause him to be permanently bedridden or so helpless as to be in need of regular aid and attendance. Consequently, the criteria for SMC based on the need for the regular aid and attendance of another person are not met. See 38 U.S.C.A. § 1114(l); 38 C.F.R. §§ 3.350(b), 3.352(a).

The Board acknowledges the Veteran's statements and those of his spouse and cleaning lady that his service-connected disabilities render him housebound and/or require the aid and attendance of another. With respect to these contentions, the Board acknowledges that the Veteran, his spouse, and cleaning lady can attest to factual matters of which they have first-hand knowledge, such as ongoing physical problems and symptoms, and their assertions in that regard are entitled to some probative weight. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). In this case, however, given the complex nature of the Veteran's service-connected disabilities and any relationship to causing him to require the aid and attendance of another or being housebound, the Board affords far greater weight to the conclusions of the July 2015 VA examiner. 

In essence, although the Board recognizes that lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), given the above individuals' lack of demonstrated medical expertise and the complexity of concluding that the Veteran's service-connected disabilities cause him to be housebound or require the aid and attendance of another for SMC purposes, the Board concludes that the statements from the Veteran, his spouse, and cleaning lady regarding any such conclusions are not competent evidence and are significantly outweighed by the medical evidence of record (including the VA examination of record). Again, the medical evidence shows that although the Veteran has significant physical and psychological impairments, he does not require the aid and attendance of another, nor is he housebound due to his service-connected disabilities. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007) (explaining in footnote 4 that a veteran is competent to provide a diagnosis of a simple condition such as a broken leg, but not competent to provide evidence as to more complex medical questions).

In other words, the Veteran's difficulty with mobility and performance of his activities of daily living have been specifically attributed to his non-service connected disabilities-such as his diabetes mellitus, coronary artery disease, CIDPN, lumbar stenosis, obesity, amongst others. This is shown both by the assertions made by the July 2015 VA examiner, as well as the notations made by private clinicians throughout the course of the appeal period. Simply put, the functional impact of his service-connected disabilities alone does not meet the criteria for SMC housebound or aid and attendance benefits. In fact, the most probative evidence of record shows otherwise. 

The Board is sympathetic to the Veteran's assertions, but under these circumstances, it finds that the claim for SMC based on the need for aid and attendance or housebound status must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the competent, probative evidence simply does not support the claim, the benefit-of-the-doubt doctrine is not applicable. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER

Entitlement to SMC based on the need for regular aid and attendance or housebound status is denied.



____________________________________________
MICHAEL LANE
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs